```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

ANTHONY C. JOHNSON,

                          Petitioner,
                                                MEMORANDUM AND ORDER
             - against -
                                                21 Civ. 6612 (NRB)
UNITED STATES OF AMERICA,                       17 Cr. 212 (NRB)

                          Respondent.

----------------------------------------X
```

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Petitioner Anthony Johnson, proceeding pro se, has filed a petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence of 121 months imprisonment, imposed following a plea agreement, for conspiring to commit sex trafficking of a minor in violation of 18 U.S.C. § 1594(c) and failing to register as a sex offender and update a registration under the Sex Offender Registration and Notification Act ("SORNA") in violation of 18 U.S.C. § 2250. ECF 68.[1] As the basis for the relief sought, Johnson argues that he received ineffective assistance of counsel. For the reasons set forth below, Johnson's petition is denied in its entirety.

---

[1] Unless otherwise noted, all ECF citations refer to Johnson's criminal case, United States v. Anthony Johnson, 17-cr-212 (NRB).

## BACKGROUND

The original indictment, filed on April 3, 2017, charged Johnson with failing to register as a sex offender and update a registration under SORNA in violation of 18 U.S.C. § 2250 and for traveling in interstate commerce to promote unlawful activity, namely, prostitution, in violation of the Travel Act, 18 U.S.C. § 1952(a)(3)(2). ECF 6. Johnson was initially represented by Federal Public Defender Jennifer Willis. ECF 3. On July 5, 2017, the Court appointed Lloyd Epstein, a member of the Southern District of New York's Criminal Justice Act ("CJA") panel, to replace Ms. Willis as there was a conflict between Ms. Willis' representation of Johnson and another of her clients. ECF 14, 15.

During the course of the Government's investigation into a different individual, whose case was proceeding before Judge Preska, the Government identified evidence of Johnson's involvement in the trafficking of a minor. ECF 72 at 9. Accordingly, the Government gave Johnson the option of continuing to litigate the Travel Act and SORNA charges before the undersigned and also being indicted in the case before Judge Preska for trafficking a minor, or, alternatively, avoiding charges in the case before Judge Preska and pleading guilty to a Superseding Information in this case, which would charge Johnson with conspiracy to commit sex trafficking of a minor in violation of 18

U.S.C. § 1594(c) and violating SORNA, but did not include a Travel Act violation.  Id.; ECF 29.

Pursuant to a written plea agreement with the Government, Johnson pled guilty to the Superseding Information on March 5, 2018.[2]  ECF 29, 31, 72-1.  The plea agreement provided a stipulated guidelines range of 121 to 151 months imprisonment, based on a combined offense level of 29.  ECF 31 at 11:12-15; ECF 72-1 at 4. On October 30, 2018, this Court sentenced Johnson to 121 months imprisonment and 5 years of supervised release.  ECF 55, 57.

Johnson, proceeding pro se, filed a notice of appeal of his conviction and sentence on November 1, 2018.  ECF 56.  On appeal, Johnson's assigned appellate counsel filed a motion to withdraw as counsel pursuant to Anders v. California, 386 U.S. 738 (1967), arguing that Johnson has "no non-frivolous issues to raise" on appeal.  United States v. Anthony Johnson, No. 18-3362 (2d. Cir. 2018), ECF 43 ¶ 7; see also No. 18-3362, ECF 44 at 17-28.  On September 24, 2019, Johnson filed an opposition to his appellant counsel's Anders brief, arguing that the stipulated guidelines range and base offense level were miscalculated and not challenged by his counsel.  No. 18-3362, ECF 51 at 1-2.

---

[2] A change of plea hearing was previously held on February 20, 2018, but was adjourned after Johnson did not seem to understand that the new charge in the Superseding Information had not been presented to a grand jury.  ECF 33 at 5:23-7:16.  In adjourning the hearing, the Court emphasized that the postponement was "not going to hurt the defendant."  Id. at 7:19. During the March 5, 2018 change of plea hearing, Johnson stated that he understood what a grand jury was and agreed to waive presentment to a grand jury.  ECF 31 at 4:24-5:17.

3

On December 12, 2019, the Government moved to dismiss the appeal based on Johnson's appeal waiver or for a summary affirmance of the conviction and sentence.  No. 18-3362, ECF 67.  Johnson filed a response on February 20, 2020, arguing, once again, that his counsel failed to challenge his base offense level and stipulated guidelines range and claiming that his counsel failed to argue for a three-point offense level reduction of his base offense level under U.S.S.G. § 2X1.1(b)(2).  No. 18-3362, ECF 85.

On June 29, 2022, the Second Circuit granted appellant counsel's Anders motion; granted the Government's motion to dismiss Johnson's appeal; and granted the Government's motion for summary affirmance of Johnson's conviction, conditions of supervised release, and special assessment.  ECF 64.

On July 30, 2022, Johnson filed a motion for panel reconsideration, or, in the alternative, for reconsideration en banc due to ineffective assistance of counsel for the same reasons raised in his previous opposition briefs.  No. 18-3362, ECF 105.  On August 27, 2020, the Second Circuit denied Johnson's motion.  No. 18-3362, ECF 110.

On August 4, 2021, Johnson, proceeding pro se, filed a petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence due to alleged ineffective assistance of counsel.  ECF 68.  Prior to the filing of that petition, Johnson's counsel passed away.  ECF 72 at 9 n.3.  The Court ordered the Government

4

to answer the petition, ECF 69, which the Government filed on October 4, 2021, ECF 72. Johnson filed a reply on June 9, 2022. ECF 81.

We now address Johnson's most recent effort to challenge his conviction and sentence.

## LEGAL STANDARD

Under 28 U.S.C. § 2255(a), a petitioner may seek collateral review of a conviction and sentence by "mov[ing] the court which imposed the sentence to vacate, set aside, or correct the sentence." "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010) (internal citation omitted).

The "mandate rule bars re-litigation of issues already decided on direct appeal," including both "matters expressly decided by the appellate court" and "issues impliedly resolved by the appellate court's mandate." Id. (internal citations omitted). A petitioner may not avoid this bar by offering "a slightly altered rearticulation of a claim that was rejected on his direct appeal." United States v. Pitcher, 559 F.3d 120, 124 (2d Cir. 2009) (per curiam) (internal quotation marks omitted). In addition, the procedural default rule "prevents claims that could have been

5

brought on direct appeal from being raised on collateral review absent cause and prejudice." Yick Man Mui, 614 F.3d at 54. However, the procedural default rule does not bar "a Section 2255 petitioner, having already raised one or more ineffective assistance claims on direct appeal that were disposed of on the merits [from] rais[ing] additional ineffective assistance claims in a habeas proceeding" as long as the "strategies, actions, or inactions of counsel that gave rise to an ineffective assistance claim adjudicated on the merits on direct appeal [are] not [] the basis for another ineffective assistance claim in a Section 2255 proceeding." Id. at 55, 57; see also Massaro v. United States, 538 U.S. 500, 504-06 (2003) (allowing a habeas petitioner to pursue an ineffective assistance of counsel claim).

In order to prove a claim of ineffective assistance of counsel, a party must both show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) counsel's "deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In reviewing counsel's performance, judicial "scrutiny . . . must be highly deferential," and a "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. It "is not enough to show that the errors had some conceivable effect on the outcome of the proceeding." Harrington v. Richter, 562 U.S. 86, 104 (2011)

(quoting Strickland, 466 U.S. at 693). Rather, "a reasonable probability [must] exist[] that absent counsel's error, the outcome of the proceeding would have been different." United States v. Arteca, 411 F.3d 315, 321 (2d Cir. 2005). In the context of a guilty plea, a habeas petitioner must show a reasonable probability that "but for counsel's errors, the [petitioner] would not have pleaded guilty and would have insisted on going to trial." Lafler v. Cooper, 566 U.S. 156, 163 (2012).

## DISCUSSION

In his petition, Johnson raises five separate grounds for relief and argues that an evidentiary hearing is warranted. ECF 68 at 32, 56-57. He claims:

1) Johnson's counsel failed to "request and receive pertinent Brady and Giglio material," ECF 68 at 4, 32, 39-43;

2) Johnson's counsel failed to challenge the Government's guidelines calculations and base offense level, id. at 6, 32, 43-49;

3) Johnson's counsel failed to seek a three-point level reduction of his base offense level under U.S.S.G. § 2X1.1(b)(2), id. at 8, 32, 49-51;

4) Johnson's counsel prevented him from proceeding to trial, id. at 10, 32, 52-53; and

5) Johnson's counsel provided poor advice and coerced him into accepting a plea agreement, id. at 13-14, 32, 53-55.

7

Each of these grounds is discussed in turn.

**A. Ground One**

Johnson first argues that his counsel was ineffective for failing "to request and receive Brady and Giglio material as petitioner requested that was pertinent to [his] defense." Id. at 39. Johnson acknowledges that the Government did provide his counsel with Brady and Giglio material, that his counsel summarized such material for him, and that his counsel concluded that such material was "quite weak" and "without substance." Id. at 4, 39-43; ECF 81 at 4-5. However, Johnson alleges that the Government improperly forbade Johnson from personally reviewing the materials that were in his counsel's possession and that his counsel failed to challenge that prohibition. ECF 68 at 39-41. Johnson further claims that the Government threatened to charge him in the case before Judge Preska if he continued to request that the Government turn discovery over to him directly. Id. at 40. Johnson argues that if he was permitted to personally review discovery in advance of his change of plea hearing, he may have proceeded to trial and a jury may have ruled in his favor. Id. at 42.

Johnson's argument is meritless. As an initial matter, Johnson's claim that the Government prevented him from reviewing

Brady and Giglio discovery is foreclosed by the terms of his plea agreement,[3] which states:

> By entering this plea of guilty, the defendant waives any and all right to withdraw his plea or to attack his conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, Jencks Act material, exculpatory material pursuant to Brady v. Maryland, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, or impeachment material pursuant to Giglio v. United States, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

ECF 72-1 at 6.[4]  "Such waivers are enforceable where, as here, the defendant entered into the plea agreement knowingly and voluntarily." Mattera v. United States, No. 12-cr-127 (RJS), 2020 WL 774103, at *3 (S.D.N.Y. Feb. 18, 2020) (citing Tremblay v. United States, No. 05-cr-0783 (JFK), 2009 WL 1055007, at *8 (S.D.N.Y. Apr. 20, 2009)); see also United States v. Barreras, 494 F. App'x 115, 118 n.1 (2d Cir. 2012) (providing waiver in plea agreement barred defendant from later challenging his conviction on Brady grounds); Gonzalez v. United States, No. 12-cr-702 (JMF), 2022 WL 1173342, at *4 (S.D.N.Y. Apr. 20, 2022) (same).

---

[3] Johnson's argument that this plea agreement was entered into involuntarily is considered and rejected in Section C.

[4] Although this waiver does not apply to claims of ineffective assistance of counsel, Johnson's argument that the Government failed to produce discovery materials to him directly cannot be characterized as an ineffective assistance of counsel claim. See e.g., Monserrate v. United States, No. 10-cr-965 (CM), 2014 WL 7179628, at *7 (S.D.N.Y. Dec. 10, 2014) ("[Petitioner] is simply attempting to get around his appeal/collateral attack waiver by couching a frivolous Brady claim as an ineffective assistance of counsel claim.").

9

To the extent Johnson argues that his counsel was ineffective for failing to show him discovery materials that were in his counsel's possession, Johnson has still failed to identify, as he must, any "specific evidence" of which he was deprived. United States v. Jean, No. 13-cr-2380 (DC), 2021 WL 75128, at *2 (S.D.N.Y. Jan. 8, 2021). Indeed, the one example that Johnson cites demonstrates the falsity of his claim. Johnson argues that his counsel failed to show him a Facebook message from Johnson to the victim, in which Johnson asks the victim, "Are you ready to . . . try something different?" ECF 68 at 42; ECF 81 at 4-5, 34-41. Johnson claims that he only recently learned that this message was in his counsel's possession and asserts that it was the basis for the Government to charge him with conspiracy to commit sex trafficking of a minor in violation of 18 U.S.C. § 1594(c). Id. However, a letter Johnson sent to his counsel on January 31, 2018, weeks before his change of plea hearing—which Johnson attaches as an exhibit to his petition—contradicts his claim that this message was "newly discovered." ECF 68 at 21-23. Indeed, in his letter, Johnson discusses the phrase "are you ready to try something different" and possible defenses. ECF 68 at 23. Johnson was thus clearly aware of this Facebook message at the time he pled guilty.

Furthermore, Johnson's narrative that his counsel withheld this Facebook message, or any other discovery materials, does not make sense. His counsel would not have had any motive to prevent

Johnson from reviewing materials that could have potentially helped his case. Rather, Johnson's argument seems to be conveniently made after the passing of his counsel, who cannot rebut Johnson's claim. In any event, by Johnson's own description, the Facebook message is inculpatory and therefore not covered by Brady and Giglio.[5]

Even assuming arguendo that Johnson was deprived of the opportunity to review Brady and Giglio material, he has failed to show prejudice. In fact, Johnson repeatedly acknowledges that his counsel informed him that the Government's evidence was "quite weak" and "without substance." ECF 68 at 4, 40; ECF 81 at 4-5. Despite that, Johnson agreed to plead guilty. Having failed to identify any Brady or Giglio materials that were not produced or any other discovery that he allegedly did not have the opportunity to review, Johnson has not only failed to demonstrate the first prong of ineffective assistance, but also the second prong. There has been no showing of prejudice or effect on Johnson's decision to plead guilty.

---

[5] Johnson further states that he blocked communication with the victim shortly after this message was sent, but Johnson does not claim that any discovery material evidencing Johnson's termination of communication exists. ECF 68 at 42. To the contrary, in the Facebook messages Johnson claims were withheld, Johnson asks the victim for her cell phone number, presumably to continue their conversation offline. ECF 81 at 36.

**B. Grounds Two and Three**

Johnson next argues that his counsel failed to challenge the stipulated guidelines calculations and base offense level, ECF 68 at 6, 32, 43-49, and failed to seek a three-point level reduction of his base offense level under U.S.S.G. § 2X1.1(b)(2), id. at 8, 32, 49-51. However, Johnson made these same arguments on direct appeal in his opposition to his appellant counsel's Anders brief, his response to the Government's motion to dismiss the appeal, and his motion for panel reconsideration. No. 18-3362, ECF 51, 85, 105. The Second Circuit rejected Johnson's arguments each time. No. 18-3362, ECF 97, 110. Contrary to Johnson's claim that the Second Circuit dismissed his appeal "based solely on the appeal waiver located in the plea agreement," ECF 81 at 8, the Second Circuit summarily affirmed Johnson's conviction, conditions of supervised release, and special assessment, and then denied Johnson's motion for reconsideration, No. 18-3362, ECF 97. Johnson is therefore barred from "re-litigat[ing] [these] issues already decided on direct appeal." Yick Man Mui, 614 F.3d at 53.

**C. Grounds Four and Five**

In his fourth and fifth grounds for dismissal, Johnson argues that he was coerced into pleading guilty and therefore prevented from proceeding to trial. ECF 68 at 10-11, 13-14, 32, 52-55. Johnson claims that his counsel, who allegedly told him that Judge Preska would give Johnson a harsh sentence if he were found guilty

12

after a trial, "continuously argued with [Johnson] about his interest of going to trial and [failed] to make proper [trial] preparations."  Id. at 10.  Johnson further alleges that his counsel forced him to read a statement during his change of plea hearing, which inaccurately stated that he acted "in agreement with another person," given Johnson did not have co-defendants and was "not guilty of conspiracy." Id. at 13, 24.

 The only evidence Johnson provides in support of these claims is: (i) a letter that Johnson sent to his counsel, describing potential defense strategies that could be raised at trial, id. at 21-23; (ii) the statement that Johnson's counsel allegedly told Johnson to read during the change of plea hearing, id. at 24; (iii) a transcript from Johnson's February 20, 2022 plea hearing, which was adjourned after Johnson did not seem to understand the charges in the information had not been presented to a grand jury, id. at 25-30; (iv) a letter from Johnson's counsel to Johnson, attaching the indictment in the case before Judge Preska, which Johnson claims was given to him "in hopes of convincing [Johnson] to withdraw his trial request," ECF 81 at 21, 69-76; and (v) drafts of an earlier plea agreement and superseding information, which Johnson refused, id. at 21, 77-84.  None of these documents demonstrate coercion on the part of Johnson's counsel.  Rather, they show that Johnson and his counsel weighed whether or not to accept the plea agreement by discussing the charges Johnson was

13

facing as well as the charges against the defendant in the case before Judge Preska; that counsel negotiated with the Government on the terms of Johnson's plea agreement; and that there was no pressure applied to Johnson to proceed with a guilty plea at his first change of plea hearing, when Johnson seemed to not understand that one of the charges in the Superseding Information had not been presented to a grand jury.  Indeed, Johnson's counsel asked the Court to adjourn the hearing until a later date, at which time Johnson stated that he understood that he was waiving his right for the new charge to be presented to a grand jury.  ECF 31 at 5.

Not only has Johnson not come forward with any evidence that corroborates his claim that his counsel coerced him into accepting the plea agreement, but his allocution on the record in open court also belies any such claim. See, e.g., Blackledge v. Allison, 431 U.S. 63, 73–74 (1977) (explaining that "the representations of the defendant, his lawyer, and the prosecutor" at a plea hearing, "as well as findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."); United States v. Juncal, 245 F.3d 166, 171 (2d Cir. 2001) (providing a defendant's testimony during a plea allocution "carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and

14

contradictory testimony as to whether a plea was knowingly and intelligently made"); Adames v. United States, 171 F.3d 728, 732 (2d Cir. 1999) ("A criminal defendant's self-inculpatory statements made under oath at his plea allocution carry a strong presumption of verity and are generally treated as conclusive in the face of the defendant's later attempt to contradict them." (internal citations and quotations omitted)); Mejia v. United States, 740 F. Supp. 2d 426, 429 (S.D.N.Y. 2010) ("A defendant's bare allegations in a § 2255 petition cannot overcome his contrary statements under oath during a plea allocution, which must be given presumptive force of truth.").

At his change of plea hearing, Johnson stated that he was satisfied with his attorney, understood that he was waiving his right to a trial, and was entering the plea voluntarily:

> THE COURT: Have you had sufficient time to discuss the charges against you and your plea with your attorney, Mr. Epstein?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: Are you satisfied with the advice and counsel that he has given to you?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Are you ready to enter a plea at this time?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: What is your plea; guilty or not guilty?
>
> THE DEFENDANT: Guilty, your Honor.

ECF 31 at 6:1-12.

>THE COURT: Do you understand that if your plea is accepted, that there will be no further trial of any kind, so that by pleading guilty, you're waiving your right to a trial?
>
>THE DEFENDANT: Yes, your Honor.

ECF at 9:20-23

>THE COURT: So separate and apart from the plea agreement, have any threats or promises been made to you to make you plead guilty?
>
>THE DEFENDANT: No, your Honor.
>
>THE COURT: Separate and apart from the plea agreement, have any understandings or promises been made to you concerning the sentence that you will receive?
>
>THE DEFENDANT: No, your Honor.
>
>THE COURT: Is your plea voluntary?
>
>THE DEFENDANT: Yes, your Honor.

ECF 31 at 11:3-8.[6]

---

[6] At his change of plea hearing, Johnson also admitted that he is guilty of the underlying charges, stating that he "had a conversation on social media with a young lady that wasn't the age of 18 years old and . . . attempted to persuade her to engage in prostitution" to make money for himself, "made this agreement with others," and "understood [he] was required to register under the SORNA, and [] failed to update . . . [his] address with the proper authorities." ECF 31 at 13:15-14:4. Johnson now argues that he did not conspire with another person for the purposes of 18 U.S.C. § 1594(c) because he had no co-defendant, but his "guilty plea conclusively establishes the factual predicate for the offense to which the defendant is pleading guilty." United States v. Gregg, 463 F.3d 160, 164 (2d Cir. 2006) (per curiam). In any event, Johnson waived his right to bring a collateral challenge of his conviction and sentence when he signed the plea agreement. ECF 72-1 at 5; see also Iyer v. United States, No. 06 CR 758, 2012 WL 383623, at *3 (S.D.N.Y. Feb. 7, 2012) ("[A]lthough petitioner couches her arguments in terms of ineffective assistance of counsel, she is actually challenging her sentence, and therefore is precluded by the waiver provision contained in the sentencing agreement.").

In short, there is absolutely no support for Johnson's claim that he was coerced into entering a guilty plea. In any event, if Johnson had not accepted the plea agreement before this Court, nothing would have prevented the Government from proceeding before this Court and adding Johnson as a defendant in a superseding indictment before Judge Preska, in which case Johnson would have faced three charges instead of two. Rather, by pleading guilty to the Superseding Information in this case, Johnson avoided charges before Judge Preska and received a single sentence of 121 months imprisonment, which was the bottom of the stipulated guidelines range of 121 to 151 months.[7]  See ECF 72 at 22.

### D. Evidentiary Hearing

Finally, Johnson requests an evidentiary hearing. ECF 68 at 56-57. A court need not hold an evidentiary hearing on a habeas petition if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). It is the Court's duty, for which it has discretion, to review "the evidentiary proffers, where credible, and record in light most favorable to the petitioner," and to determine whether the petitioner, "who has the burden, may be able

---

[7] In the case before Judge Preska, the defendant, Jamel Goddard, who also pled guilty to conspiracy to commit sex trafficking of a minor in violation of 18 U.S.C. § 1594(c), was sentenced to 292 months imprisonment and 10 years of supervised release. See United States v. Jamel Goddard, No. 17-cr-439 (LAP), ECF 30. Given Goddard's total offense level was 33 and his criminal history category was VI, his stipulated guidelines range was 235 to 293 months imprisonment. See id., ECF 33 at 3:5-12, 10:21, 15:18.

17

to establish at a hearing a prima facie case for relief." Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009); accord Chang v. United States, 250 F.3d 79, 85 (2d Cir. 2001). The existing record is conclusive that Johnson is not entitled to relief on any theory presented to this Court. Accordingly, Johnson's request for an evidentiary hearing is denied.

## CONCLUSION

For the foregoing reasons, Johnson's petition is denied. Furthermore, as Johnson has failed to make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. 28 U.S.C. § 2253. It is hereby certified that any appeal from this Memorandum and Order would not be taken in "good faith" within the meaning of 28 U.S.C. § 1915(a)(3). See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

Dated:   New York, New York
         November 16, 2022

```
                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE
```